Filed 10/31/14  In re Sohpia F. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION FOUR

| | |
|---|---|
| In re SOPHIA F., a Person Coming Under the Juvenile Court Law. | B254458 |
| | (Los Angeles County Super. Ct. No. DK01802) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>FRANCISCO F.,<br><br>      Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Julie Fox Blackshaw, Judge.  Affirmed.

Daniel G. Rooney, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and John C. Savittieri, Deputy County Counsel, for Plaintiff and Respondent.

_____

Appellant Francisco F. (father) challenges the juvenile court's jurisdictional and dispositional orders removing his daughter, Sophia, from his custody. Father contends the juvenile court erred in sustaining the allegation against him under Welfare and Institutions Code section 300, subdivision (b).[1] The basis of this claim is that the Los Angeles County Department of Children and Family Services (DCFS) failed to produce sufficient evidence showing father's criminal history and criminal activities posed a substantial risk of harm to Sophia. Father also contests the child's removal from his custody based on the juvenile court's finding that he was a custodial and offending parent, and the court's failure to make an express finding of detriment pursuant to section 361.2, subdivision (c). We find no error and affirm the orders.

## FACTUAL AND PROCEDURAL SUMMARY

Sophia was born in April 2013 and lived with Alexandra L. (mother)[2] and father until June 2013, when father was arrested and subsequently convicted of possession of a controlled substance.

According to the detention report, on October 10, 2013, deputy sheriffs conducted a parole compliance inspection at the residence of mother's boyfriend, where Sophia and her mother were staying. The deputies found Sophia in a stroller outdoors, just outside of the shack where her mother and mother's boyfriend were sleeping. The deputies reported observing cockroaches and dog feces in the living area. One of the deputies, while inspecting the stroller, found a glass narcotics pipe under Sophia. Deputies searched the premises and discovered methamphetamine, which mother's boyfriend admitted was his. Mother was arrested for child endangerment. Sophia was taken into protective custody and transported to a hospital for a medical evaluation.

On October 16, 2013, DCFS filed a section 300, subdivision (b) petition containing four allegations against mother. The allegations stated mother (1) left Sophia

---

[1]     Subsequent references are to the Welfare and Institutions Code.

[2]     Mother is not a party to this appeal.

2

outside in a stroller overnight, covered in a damp blanket, (2) had a history of illicit drug use and is currently using marijuana and methamphetamine, (3) "established a detrimental and endangering home environment for the child in that methamphetamine and a drug pipe were found in the child's home, within access of the child," and (4) provided an unsanitary and filthy home environment for Sophia. The whereabouts of father were unknown at that time. A detention hearing was held on the same date; neither parent was present, but Sophia's maternal aunt and uncle attended the hearing. The court ordered DCFS to present evidence of due diligence in attempting to locate father. Sophia was detained with her aunt and uncle on October 25, 2013.

On November 21, 2013, DCFS filed an amended section 300, subdivision (b) petition adding an allegation against father. It alleged that father "has a 6 year history of illicit drug abuse which renders the father incapable of providing regular care of the child." It noted that father had been convicted of possession of a controlled substance on July 9, 2013 and presently was incarcerated. It concluded "[t]he father's substance abuse, criminal history and criminal conduct endangers the child's physical health and safety and creates a detrimental home environment for the child, placing the child at risk of physical harm and damage." A hearing was held on the same date, at which the court found father to be the presumed father of Sophia.

According to the last minute information for the court dated January 21, 2014, a social worker interviewed father in December 2013. Father denied any history of substance abuse, attributed his drug convictions to getting "caught with people who had drugs on them" and explained he was "trying to get out sooner" by taking a plea deal.

On January 22, 2014, a combined jurisdictional and dispositional hearing was held. Mother had reached an agreement with DCFS prior to the hearing and through her counsel, pleaded no contest to the amended petition. Father submitted evidence to show that, during his incarceration, he was participating in a program focusing on parenting, anger management, drug education, relationships, and spiritual growth. He argued for dismissal of the allegation against him. Counsel for Sophia and DCFS opposed his request. The court amended the petition against father to include an allegation that father

3

has a "6 year history of criminal activity, including illicit drug abuse." It sustained the amended allegation against father, as well as three counts against mother, and found that Sophia was a person described by section 300, subdivision (b). Father then requested custody of Sophia pursuant to section 361.2, arguing that he was a noncustodial parent. The court instead found father was a custodial and offending parent. It thus proceeded under section 361, subdivision (c) and removed Sophia from father's custody after finding clear and convincing evidence that there would be substantial danger to Sophia if she were to remain with father. The court made an additional finding on the record that, even if father was a noncustodial parent, he was still not entitled to custody under section 361.2 because "there would be a detriment to releasing [Sophia] to the father." Finally, the court ordered father to participate in drug rehabilitation, 12 step and parenting programs with random and on-demand drug testing every other week. It also ordered father to have monitored visits with Sophia.

This timely appeal followed.

## DISCUSSION

A juvenile court's jurisdictional and dispositional orders are reviewed on appeal for substantial evidence. (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193.) "Substantial evidence is evidence that is reasonable, credible, and of solid value. [Citation.]" (*In re Veronica G.* (2007) 157 Cal.App.4th 179, 185.) The reviewing court must view the record in the light most favorable to the juvenile court's decision. (*In re Heather A.*, *supra*, at p. 193.) "[I]ssues of fact and credibility are the province of the trial court." (*Ibid.*)

I

Section 300, subdivision (b) provides that a child comes within the juvenile court's jurisdiction if the court finds "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the

4

child, . . . or by the willful or negligent failure of the parent or guardian to provide the child with adequate food, clothing, shelter, or medical treatment, or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse." Notably, a "court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child [citation]. The court may consider past events in deciding whether a child presently needs the court's protection. [Citation.] A parent's '"[p]ast conduct may be probative of current conditions" if there is reason to believe that the conduct will continue.' [Citation.]" (*In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1216.) A jurisdictional finding under this provision requires "(1) neglectful conduct by the parent in one of the specified forms; (2) causation; and (3) 'serious physical harm or illness' to the minor, or a 'substantial risk' of such harm or illness." (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 820.)

Father argues the juvenile court was impermissibly "speculating" that his continuing criminal conduct involving drugs would place Sophia at risk of harm, and asserts the court erred in sustaining the allegation against him.[3] It is true that a parent's use of drugs or criminal history alone cannot be the basis for finding jurisdiction over a child. (*See In re Rebecca C.* (2014) 228 Cal.App.4th 720, 726; *In re Sergio C.* (1999) 70 Cal.App.4th 957.) This is because, as father argues, a nexus must be established between the parent's conduct and the harm or substantial risk of harm. We note, however, that for children of tender age such as Sophia, the absence of adequate supervision and care alone poses an inherent risk to their physical health and safety and establishes that nexus. (*In re Rocco M.*, *supra*, 1 Cal.App.4th at p. 824.)

---

[3] In making its jurisdictional finding, the juvenile court sustained allegations against both mother and father. Thus, father's challenge against the court's finding as to the allegation against him will not affect its jurisdiction over Sophia. However, we address his arguments because the juvenile court relied on its jurisdictional findings to decide the custody issue under sections 361 and 361.2.

Under these principles, there was substantial evidence supporting the juvenile court's jurisdictional finding. Although father denied using drugs, the court drew a fair inference, based on his multiple possession convictions, that he was a drug user. Before Sophia was born, father had suffered several drug-related criminal convictions and was required to register as a controlled substance offender in 2010, though he attributed his drug convictions to getting "caught with people who had drugs on them" and that he was "trying to get out sooner" by taking a plea deal.[4] More importantly, Sophia's birth did not deter father from his ongoing involvement with drugs. Just two months after Sophia was born, father was arrested and subsequently convicted of possession of a controlled substance; he was incarcerated for that offense at the time of the dependency proceedings. Moreover, father admitted that he knew Sophia's mother had a substance abuse problem and stated that she had been using drugs as long as he had known her. Even with this knowledge, father left two-month-old Sophia under the care of mother upon incarceration. After he was incarcerated, he heard mother was "going hotel to hotel partying and doing drugs" but aside from directing his family members to try to contact mother, made no efforts to ensure proper care of Sophia. In *In re Rocco M.*, the court expressed skepticism about a juvenile court's jurisdictional finding based upon a parent's "general failure to supervise" an 11-year-old child because he was "old enough to avoid the kinds of physical dangers which make infancy an inherently hazardous period of life." (*In re Rocco M.*, *supra*, 1 Cal.App.4th at p. 825.) In this case, however, Sophia was an infant who was particularly vulnerable to her parents' neglect. Father's denial of his involvement with drugs and his tolerance of mother's drug use gave the juvenile court reason, "beyond mere speculation," to believe his neglectful conduct will reoccur. (*In re Ricardo L.* (2003) 109 Cal.App.4th 552, 565.)

---

[4]     The California Law Enforcement Telecommunication System report for father shows prior convictions for possession of a controlled substance while armed (2007), use/under the influence of a controlled substance (2008), and possession of a controlled substance (2012).

In his reply brief, father contends DCFS's focus on appeal on his incarceration and criminal history as impacting father's ability to provide supervision and care is a veiled argument for sustaining jurisdiction under section 300, subdivision (g),[5] which was not the basis of DCFS's original petition. DCFS, however, is not making a section 300, subdivision (g) argument. Its contention is based on the reasoning of *In re Rocco M.* that, "*the absence of adequate supervision and care* poses an inherent risk to [the] physical health and safety" of children of tender years. (*In re Rocco M.*, *supra*, 1 Cal.App.4th at p. 824, italics added.) *In re Rocco M.*, like this case, involved a section 300, subdivision (b) issue and did not concern section 300, subdivision (g). Father's argument is not well taken.

## II

A dependent child "may not be taken from the physical custody of his or her parents . . . with whom the child resides at the time the petition was initiated" (§ 361, subd. (c)), unless the juvenile court finds clear and convincing evidence that "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home" and there is no reasonable means to protect the child without removing the child from the home. (§ 361, subd. (c)(1).) A noncustodial parent of a child removed under section 361 may request custody under section 361.2. The court "shall" grant custody to the requesting parent unless it finds, by clear and convincing evidence, that "placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child." (§ 361.2, subd. (a); *In re Marquis D.* (1995) 38 Cal.App.4th 1813, 1821.) "The court shall make a finding either in writing or on the record of the basis for its determination." (§ 361.2, subd. (c).)

---

[5] Section 300, subdivision (g) states, "The child has been left without any provision for support; . . . the child's parent has been incarcerated or institutionalized and cannot arrange for the care of the child . . . ."

A.     *Section 361, Subdivision (c)*

Because the juvenile court determined father was a custodial parent, it removed Sophia from father's custody under section 361, subdivision (c); it found by clear and convincing evidence that there would be substantial danger to Sophia's health, safety, protection, or physical or emotional well-being if she remained in father's custody.  As discussed above, father failed to provide Sophia with adequate care and supervision. Father led a drug-related criminal lifestyle, which he elected to continue even after Sophia's birth.  This led to his incarceration when Sophia was just two months old, leaving her in the sole care of her mother, whom he knew to have substance abuse issues. Father did present evidence of his participation in a parenting program, but the juvenile court found the evidence weighed in favor of removing Sophia from father's custody. We do not reweigh evidence presented in the juvenile court; we merely review the record for substantial evidence to support the juvenile court's ruling.  (*In re A.E.* (2014) 228 Cal.App.4th 820, 826.)  We find there is substantial evidence supporting the juvenile court's order.

B.     *Section 361.2, Subdivision (a)*

Father argues the juvenile court erred in proceeding under section 361; rather, it should have considered his request for custody under section 361.2, as Sophia was not residing with him at the time she was detained.  He also argues the court erroneously read into section 361.2, subdivision (a), a requirement that the parent requesting custody must be a nonoffending parent.[6]  We need not address these issues, as the juvenile court made

---

[6]     We note that a split of authority currently exists among the Courts of Appeal as to whether, when considering placement with a noncustodial parent, the juvenile court must determine if the parent is offending or nonoffending.  (Compare *In re Nickolas T.* (2013) 217 Cal.App.4th 1492, 1504 ["We are not persuaded . . . a parent must be both 'noncustodial' and 'nonoffending' to be considered for placement under section 361.2"] with *In re John M.* (2013) 217 Cal.App.4th 410, 421-422 [requiring the noncustodial parent to be nonoffending in order to request custody under section 361.2].)

an alternative ruling that in the event section 361.2 applied to father, custody should be denied because Sophia would suffer detriment if placed with him.

There is substantial evidence to support that finding. Section 361.2, subdivision (a) requires a finding of detriment, which is a weighing of "all relevant factors to determine if the child will suffer net harm," including emotional harm. (*In re Luke M.* (2003) 107 Cal.App.4th 1412, 1425.) This is a standard less onerous than that of section 361, subdivision (c)(1), which requires a finding of "substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor." (*Cf. In re A.A.* (2012) 203 Cal.App.4th 597, 610 [prior finding of substantial danger under section 361, subdivision (c) is enough to preclude consideration of mother's custody request under section 361.2].) Since the juvenile court's finding of substantial danger under section 361 is supported by substantial evidence, there is likewise substantial evidence to support a finding that, under section 361.2, subdivision (a), Sophia would suffer detriment if placed with father.

C.    *Section 361.2, Subdivision (c)*

Despite the juvenile court's alternative ruling, father argues the court failed to make an oral or written statement of the basis for its determination of detriment as required by section 361.2, subdivision (c).[7] Instead, father contends, the juvenile court improperly relied on its substantial danger finding under section 361, subdivision (c) to make its detriment finding under section 361.2, subdivision (a). After hearing the evidence, the court stated it believed its findings with respect to section 361, subdivision (c) "will satisfy any requirement under 361.2 unless somebody advises me otherwise." Counsel for father did not object. Thus, father forfeited this challenge on appeal. (*In re A.A.*, *supra*, 203 Cal.App.4th at p. 605; *In re Sabrina H.* (2007) 149 Cal.App.4th 1403, 1419.) Notwithstanding forfeiture, the court made a proper alternative ruling under section 361.2, subdivision (a) by finding that there is clear and

---

[7]    Section 361.2, subdivision (c) states, "The court shall make a finding either in writing or on the record of the basis for its determination under subdivisions (a) and (b)."

9

convincing evidence of detriment in releasing Sophia to father. To the extent that it failed to adhere to the requirements of section 361.2, subdivision (c) by failing to provide "a statement of reasons" for its decision, the error was harmless because father suffered no prejudice. (*In re J.S.* (2011) 196 Cal.App.4th 1069, 1078-1079 [court's failure to give a "statement of reasons" for its juridical decision under section 361.2, subdivision (c) was harmless error because there was "no reasonable probability that had the trial court complied with the statutory requirement, it would have answered differently"].) As we have stated, since there was substantial evidence to support the court's "substantial danger" finding under section 361, subdivision (c)(1), there is similarly substantial evidence to support the court's detriment finding under section 361.2, subdivision (a). Thus, there is no reasonable probability that the juvenile court would have arrived at a different conclusion had it complied with section 361.2, subdivision (c). (*Id.* at p. 1079.)

## DISPOSITION

We affirm the orders of the juvenile court.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.**

EPSTEIN, P. J.

We concur:

WILLHITE, J.

COLLINS, J.

10